Filed 2/24/22  P. v. Smutz CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B309624 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA028070) |
| v. | |
| GABRIEL ANTHONY SMUTZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Mangay Chung, Judge.  Reversed and remanded with directions.

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

---

**INTRODUCTION**

Gabriel Anthony Smutz appeals from the trial court's denial of his petition to vacate his murder conviction under Penal Code section 1170.95 (Section 1170.95). Smutz and a codefendant were convicted of the murder of Brandi Olivares, whom Smutz's codefendant admittedly shot with a shotgun. Both Smutz and his codefendant denied that Smutz was involved in Olivares's death. However, according to the testimony of a detective who interviewed reluctant witness Yolanda Mezey before trial, Mezey had reported that: (1) Smutz had admitted to Mezey that on the day of Olivares's death, he and other men, including his codefendant, had raped Olivares and then forcibly transported her to the location where her body was found; and (2) within hours of Olivares's death, Smutz had arrived at Mezey's home with a shotgun, which he directed her to get rid of. The jury was instructed that it could convict Smutz under a felony murder theory, based on his involvement in Olivares's "rape and/or kidnapping." The jury convicted Smutz of Olivares's murder, and we affirmed. (*People v.*

2

*Ward* (December 1, 2006, B179883) Cal.App.Unpub. LEXIS 10906 (*Ward*).)

After the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), which narrowed the felony murder rule by requiring findings that the defendant have been at least a major participant in the underlying felony and have acted with reckless indifference to human life, Smutz filed a petition to vacate his murder conviction under Section 1170.95. The trial court issued an order to show cause, held an evidentiary hearing, and denied the petition. Without independently evaluating the credibility of Mezey or any other witness, the court concluded there was substantial evidence to support a finding beyond a reasonable doubt that Smutz was guilty under the felony murder rule as narrowed by SB 1437.

On appeal, the parties agree the court erred in applying a substantial evidence standard. They dispute which, if any, harmless-error standard applies, and whether the applicable standard requires reversal. We agree with the parties that the court erred in applying a substantial evidence standard. We need not address the parties' dispute regarding the harmless-error standard, as we conclude the error requires reversal even under the standard advanced by the Attorney General, viz., the reasonable-probability standard set forth in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). Accordingly, we reverse the order denying Smutz's petition and remand for a new evidentiary hearing.

# BACKGROUND

## A. Underlying Judgment

Smutz and codefendant Scott Miguel Ward were each charged with one count of murder in violation of Penal Code section 187, subdivision (a), with associated gang and firearm allegations.[1] (*Ward*, *supra*, Cal.App.Unpub. LEXIS 10906, at *1-*2.)

### 1. Prosecution Case

In November 2003, Brandi Olivares died from wounds inflicted by shotgun pellets. (*Ward*, *supra*, Cal.App.Unpub. LEXIS 10906, at *3.) Her body was found outside a residence in a remote area off Barrel Springs Road in Palmdale, in circumstances suggesting that before she was shot, she had climbed over the residence's fence and attempted to enter its garage through a dog door. (*Id.* at *3-*4, *29.) Smutz's DNA, as well as that of another man, was found on the exterior of Olivares's genitals. (*Id.* at *64, *73.)

The prosecution called Yolanda Mezey (an acquaintance of Smutz), who testified reluctantly, expressing fear that she would be labeled a snitch and that she or her family would be killed.[2] (*Ward*, *supra*, Cal.App.Unpub.

---

[1]  We grant the Attorney General's request that we take judicial notice of the record on direct appeal.

[2]  Ward admitted he had disseminated Mezey's witness information, including her address, to fellow members of the 22nd Street Gang. (*Ward*, *supra*, Cal.App.Unpub. LEXIS 10906,
*(Fn. is continued on the next page.)*

LEXIS 10906, at *8, fn. 5.)  In part for the purpose of impeaching Mezey with prior inconsistent statements, Los Angeles County Sheriff's Department Detective Todd Anderson was allowed to testify to statements Mezey made to him during two pretrial interviews.  (*Id.* at *4, *54.) Detective Anderson testified that during her first interview, Mezey told him that on the day after Olivares's death, Smutz phoned Mezey and told her Olivares was dead.  (*Ward, supra*, Cal.App.Unpub. LEXIS 10906, at *4.)  Smutz further told Mezey that he and other men had had sex with Olivares during a party at another woman's apartment, the other woman had ejected them from the apartment after she caught them having sex, and Olivares had said she had been raped.  (*Ibid.*)  Smutz was very upset about what had happened, and told Mezey that Olivares was his girlfriend, and that he could have prevented her death, but did not. (*Ibid.*)

Detective Anderson testified that during Mezey's second interview, conducted in jail, Mezey told him that Smutz had told her the following: During the party at the other woman's apartment, Smutz, Ward, Mezey's relative "Nano," and an accomplice gave Olivares Klonopin (a pain medication with a sedative effect).  (*Ward, supra*, Cal.App.Unpub. LEXIS 10906, at *4-*6 & fn. 2, *49, fn. 22.) Smutz and the other men raped Olivares while she was too

at *8, fn. 5, *38, fn. 16.)  Smutz also belonged to the gang.  (*Id.* at *38, fn. 16.)

intoxicated to consent to sex. (*Id.* at *6.) Eventually, the party's host entered the room and started hitting Olivares. (*Ibid.*) Olivares seemed to realize what was happening, and either ran out of the apartment or was ejected by the host. (*Ibid.*) Pursued by Smutz, Ward, and Nano, Olivares ran to an adjacent parking lot, screaming that she had been raped. (*Ibid.*) Smutz, Ward, and Nano placed Olivares in the back seat of Nano's car, where Smutz joined her, while Nano and Ward entered the front seats. (*Ibid.*) Nano drove toward Barrel Springs Road (where Olivares's body was later found). (*Ibid.*) There, Olivares jumped out of the car. (*Ibid.*)

Mezey also told Detective Anderson that within hours of Olivares's death, Smutz, Ward, and Nano arrived by car at Mezey's home. (*Ward, supra,* Cal.App.Unpub. LEXIS 10906, at *4-*5.) Smutz produced a shotgun and shells, which he directed Mezey to get rid of. (*Ibid.*) She placed the items in her storage locker. (*Id.* at *4, *5, fn. 3.) The day after Mezey's second interview, Detective Anderson searched her storage locker and found a shotgun and shells. (*Id.* at *5, fn. 3.)

### 2. Defense Case

Smutz testified that during the party preceding Olivares's death, he had consensual sex with her (inviting Ward to participate, which Ward did only briefly), the party's host attacked her, and she left the apartment without him. (*Ward, supra,* Cal.App.Unpub. LEXIS 10906, at *7-*8, *64.) Smutz denied raping Olivares, kidnapping

6

her, or having any involvement in her death. (*Id.* at *8.) He further denied making the alleged admissions to Mezey described by Detective Anderson. (*Ibid.*)

Ward admitted he shot Olivares, but denied raping or kidnapping her. (*Ward, supra*, Cal.App.Unpub. LEXIS 10906, at *6-*7.) He testified Olivares asked him for a ride home and directed him to Barrel Springs Road, where she taunted and hit him, provoking him to fire at her twice. (*Id.* at *7, *45, fn. 21.) He then drove away and rid himself of the shotgun. (*Id.* at *45, fn. 21.) Smutz was not present. (*Id.* at *7.)

### 3. Judgment and Appeal

With respect to the charge against Smutz, the jury was instructed on both a direct aiding and abetting theory, and a felony murder theory based on his involvement in Olivares's "rape and/or kidnapping." (*Ward, supra*, Cal.App.Unpub. LEXIS 10906, at *62.) Smutz and Ward were found guilty as charged, and the gang and firearm allegations were found true. (*Id.* at *1-*2.) Smutz was sentenced to imprisonment for 25 years to life, plus a 25-year firearm enhancement and a gang enhancement. (*Id.* at *3.) We affirmed the judgment, as modified to vacate the gang enhancement. (*Id.* at *35, fn. 15, *76-*77.) We held, inter alia, there was substantial evidence of Smutz's murder liability under both the direct aiding and abetting theory and the felony murder theory. (*Id.* at *62-*66, *71-*76.)

### B. The Instant Petition

In February 2019, Smutz filed a petition to vacate his murder conviction under Section 1170.95, alleging that he had been convicted under the felony murder rule, and that he was not guilty under that rule as narrowed by SB 1437 (or under any other still-valid theory).[3] At Smutz's request, the trial court appointed counsel for him. The prosecution opposed the petition, arguing Smutz was ineligible for relief because he could still be convicted of murder, under either a felony murder theory or a direct aiding and abetting theory. The court issued an order to show cause.

On November 23, 2020, the court held an evidentiary hearing.[4] Smutz's counsel urged the court to credit Smutz's testimony rather than his alleged admissions. The prosecutor argued that the jury had credited Smutz's admissions, and that the court had no basis to reevaluate the

---

[3] SB 1437 narrowed the felony murder rule by amending Penal Code section 189, subdivision (e) to provide that a defendant is not guilty of felony murder unless the defendant: (1) was the actual killer; (2) acted with the intent to kill as an aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. (See Pen. Code, § 189, subd. (e); Stats. 2018, ch. 1015, § 3.)

[4] In advance of the evidentiary hearing, Smutz submitted a declaration in which, consistent with his trial testimony, he denied any involvement in Olivares's death, and further denied having admitted such involvement to Mezey. Smutz also submitted documents concerning his education while incarcerated and his relationships with his fiancée and daughter.

evidence. Relatedly, the prosecutor argued that the court was required to apply a standard akin to the substantial evidence standard of appellate review, as held in *People v. Duke* (2020) 55 Cal.App.5th 113, 272 (*Duke*), review granted Jan. 13, 2021, and cause transferred Nov. 23, 2021, S265309. Under this standard, the prosecutor argued, Smutz was ineligible for relief because there was substantial evidence of his guilt, under either a felony murder theory or a direct aiding and abetting theory. Smutz's counsel made no rebuttal, and did not dispute that the court should apply a substantial evidence standard in accordance with *Duke*.

The court denied the petition. The court noted that it had presided over the trial, and that its ruling was based on the trial testimony and "the applicable standards," adding, "I know you did raise the *Duke* standard." The court observed that although various credibility challenges had been raised at trial with respect to Mezey, who was the prosecution's "main" witness, the "[t]he jury had a full opportunity to evaluate" Mezey's credibility. The court further observed that according to Smutz's alleged admissions to Mezey, Smutz's involvement in Olivares's kidnapping was "somewhat" significant, in light of factors articulated in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. The court concluded, "[T]here is substantial evidence to support [a finding] beyond a reasonable doubt that he was a major participant [in the underlying felony], committed with reckless indifference.

9

And for that reason, the petition for resentencing is denied."
Smutz timely appealed.

## DISCUSSION

Section 1170.95 permits a defendant who was convicted of felony murder to petition the sentencing court to have the conviction vacated and to be resentenced on any remaining counts where, inter alia, the petitioner could not presently be convicted of murder because of SB 1437's changes to the law. (See Pen. Code, § 1170.95, subd. (a)(3).) These changes include the amendment of Penal Code section 189, subdivision (e) to provide that a defendant is not guilty of felony murder unless the defendant was at least a major participant in the underlying felony and acted with reckless indifference to human life, as described in Penal Code section 190.2, subdivision (d). (See *id.*, § 189, subd. (e); Stats. 2018, ch. 1015, § 3.) Where, as here, the court finds the petitioner has made a prima facie showing of eligibility for relief, and the parties do not stipulate to relief after issuance of an order to show cause, the court must hold an evidentiary hearing on the petitioner's eligibility for relief. (Pen. Code, § 1170.95, subds. (c)-(d).)

The standard of proof to be applied at the evidentiary hearing was unsettled at the time of the November 23, 2020 hearing in this case, but has been clarified by subsequent caselaw and Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775). Section 1170.95 originally provided that the prosecution's burden at the evidentiary hearing was to prove

beyond a reasonable doubt the petitioner's ineligibility for resentencing, which turned in part on whether the petitioner "could" be convicted of murder after SB 1437.  (Former Pen. Code, § 1170.95, subds. (a)(3), (d)(3).)  Well before the hearing, *Duke* interpreted this original language as imposing a standard of proof "essentially identical to the [appellate] standard of substantial evidence . . . ."  (*Duke, supra*, 55 Cal.App.5th 113, 272.)  Beginning only shortly before the hearing, other published decisions disagreed with *Duke*, holding that Section 1170.95 required the prosecution to convince the trial court, sitting as an independent factfinder, of the petitioner's guilt beyond a reasonable doubt.  (See *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, and cause transferred Dec. 22, 2021, S265974 [noting on October 30, 2020, that the *Duke* court was the "only . . . other court [to have] weighed in on the nature of the required showing of ineligibility at the hearing stage"]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984 ["'it is the [trial] court's responsibility to act as independent fact finder'"].)  During the pendency of this appeal, SB 775 amended Section 1170.95 to add the following language, which clarifies that the independent-factfinding standard applies: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by [SB 1437]. . . .  A finding that there is substantial evidence to support a conviction for murder . . . is

11

insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."[5] (Pen. Code, § 1170.95, subd. (d)(3); Stats. 2021, ch. 551, § 2.)

Here, the parties agree the trial court erred in applying "the *Duke* standard," pursuant to which the court denied Smutz's petition on the basis of its finding of "substantial evidence" of Smutz's guilt under the felony murder rule (as narrowed by SB 1437). We agree. We cannot fault the court for accepting the prosecutor's unopposed invitation to follow *Duke*, which remained good law at the time of the hearing. But with the benefit of subsequent caselaw and SB 775, we conclude the court's application of a substantial evidence standard was error.

We need not address the parties' dispute regarding which, if any, harmless-error standard applies, as we conclude the error was prejudicial even under the *Watson* standard advanced by the Attorney General. (See *People v. Sandoval* (2015) 62 Cal.4th 394, 422 [under *Watson* standard, error is reversible if there is a reasonable probability -- meaning more than an abstract possibility -- that the appellant would have obtained a more favorable

---

[5] Our Supreme Court initially granted review in *Duke* on the issue whether a substantial evidence standard or an independent-factfinding standard applied, but after the enactment of SB 775, it transferred the matter to the Court of Appeal for reconsideration, rendering *Duke* "either 'depublished' or 'not citable.'" (*Duke*, S265309, Supreme Court Mins., Jan. 13, 2021, and Nov. 23, 2021.)

result absent the error].)  The record does not enable us to determine how the trial court, had it sat as an independent factfinder, would have evaluated the evidence of Smutz's guilt under a still-valid theory of murder.  The evidence at trial raised substantial issues of credibility, as the prosecution relied primarily on Detective Anderson's secondhand account of Mezey's pretrial statements to him (admitted in part to impeach Mezey), and his thirdhand account of Smutz's disputed admissions to Mezey.  Although the court had presided over the trial, it commented during the hearing that *the jury* had had an opportunity to evaluate challenges to Mezey's credibility; the court did not purport to independently evaluate her credibility, or the credibility of any other witness.  On this record, any conclusion as to what the court would have found as an independent factfinder is speculative.  Accordingly, we will reverse the order denying Smutz's petition, and remand for a new evidentiary hearing.

## DISPOSITION

The order denying Smutz's petition for resentencing under Section 1170.95 is reversed. The matter is remanded to the trial court with directions to hold a new evidentiary hearing on Smutz's eligibility for relief from his murder conviction.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

14